William B. WEINBERGER, Robert Smith, Stein Family Foundation, Inc. and Edith Citron, Plaintiffs,

v.

James C. KENDRICK, Harry E. Pierson, A. Richard Butler, Robert H. Anderson, John E. Sundman, Richard M. Scarlata, Joseph W. Chinn, Jr., Raymond H. Fogler, Joseph Hinsey, John D. Gray, Dewitt Peterkin, Jr., Louis Lustenberger, Charles Phillips, Asa T. Spaulding, C. W. Spangle, E. Robert Kinsey, Richard W. Mayer, Morgan Guaranty Trust Company of New York, Individually and as Agent for a Group of Twenty-Seven Lending Banks described herein, Chase Manhattan Bank, N.A., Citibank N.A., the Bank of New York, Bankers Trust Company, Chemical Bank, Irving Trust Company, Marine Midland Bank, Sanwa Bank Ltd., Manufacturers Hanover Trust Company, Ernst & Ernst and W. T. Grant Co., Defendants.

No. 75 Civ. 4870.

United States District Court, S. D. New York.

April 4, 1978.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs by Lester L. Levy, Marian R. Probst, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant Ernst & Ernst by Edward N. Sherry, Weaver H. Gaines, Jr., Douglas A. Fisher, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

By opinion and order dated January 24, 1977, I granted the motions of defendants Morgan Guaranty Trust Company of New York, Ernst & Ernst, and the officers and directors of W. T. Grant Company, also a defendant herein, to dismiss this shareholders' complaint, alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 106–5 promulgated thereunder and common law fraud, for failure to state a claim upon which relief can be granted under Rule 12(b)(6), F.R.Civ.P., and allowed plaintiffs leave to replead. 432 F.Supp. 316 (S.D.N.Y.1977). Plaintiffs have done so. Defendant Ernst and Ernst, the accounting firm for W. T. Grant Company at the time of the occurrence of the acts of which plaintiff complains, now challenges the sufficiency of the second amended complaint as to it for failure to plead the circumstances constituting the fraud with sufficient particularity as required by Rule 9(b), F.R.Civ.P.

In my previous opinion I determined that the original complaint, which contained allegations "upon information and belief," was fatally devoid of facts upon which to base the belief that Ernst & Ernst practiced securities and common law fraud upon plaintiffs. 432 F.Supp. at 321. *See Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir. 1972). I noted that only neutral facts and conclusions had been pleaded and that the com-

plaint failed to "give notice of which figures contained in which financial statements were made by Ernst & Ernst with an intent to deceive." 432 F.Supp. at 321.

The second amended complaint has attempted to cure these deficiencies. However, it is clear as to those allegations which group Ernst & Ernst with all other defendants in failing to make timely disclosure of certain information purportedly evidencing W. T. Grant Company's deteriorating financial condition (¶¶ 31, 32) and in disseminating public statements concerning that Company's actual or anticipated profits and loss (¶ 33), there is lacking the requisite factual

specificity from which an inference of fraud on the part of Ernst & Ernst may be drawn with regard to Ernst & Ernst. These allegations merely restate those originally pleaded (*compare* first Complaint, ¶¶ 12, 13, 14,) and found wanting. 432 F.Supp. at 321.

■■ The thrust of plaintiffs' endeavor to cast liability on Ernst & Ernst for its "knowingly or recklessly certifying false financial statements of Grant" (Plaintiffs' Memorandum in Opposition, p. 3) is purportedly reflected in the amended allegations set forth in the margin,[1] and it is to a consideration of the sufficiency of those

1. The second amended complaint alleges, "upon information and belief":

34. In addition to the above-described false and misleading public statements, the defendants (except Anderson) also issued and disseminated or knowingly approved of and acquiesced in the issuance and dissemination to the public, including plaintiffs and other members of the class similarly situated, and filed with the Securities and Exchange Commission, financial statements and annual reports, which said defendants knew to be false and misleading or were made in reckless disregard of their falsity. These statements included the following:

A. In the consolidated financial statements certified by defendant Ernst & Ernst contained in Grant's 1973 Annual Report issued in or about March, 1974, net accounts receivables from customers installment accounts, carried as assets of Grant, were reported to be in the amount of $579,315,532, after deduction of $22,989,598 as an allowance for doubtful accounts and unearned credit insurance premiums. The reporting of the net accounts receivables from consumer installment accounts in the amount of $579,315,532 was false and misleading, in that, *inter alia,* it did not report or reflect, among other things, the fact that (i) in May, 1973, Grant changed its write-off policy with respect to customer installment accounts from a six-to-nine months delinquency in payments in order to avoid write-offs of accounts becoming delinquent until the next fiscal year; (ii) that the amount of delinquent account balances not written off in fiscal 1973 as a result of the six-to-nine month change was approximately $6.2 million; (iii) that a substantial portion of Grant's customer accounts receivables were highly risky and speculative, and essentially worthless, (iv) that in fiscal 1974 a substantial portion of Grant's customer accounts receivables amounting to many millions of dollars would have to be written off, (v) that the provision for doubtful accounts was grossly inadequate and (vi) that by reason of the fore-

going, the amount of net customer accounts receivable reported was grossly overstated.

(B) In the aforementioned consolidated financial statements, merchandise inventory, carried as an asset of Grant's was reported to be in the amount of $450,636,556, determined "at the lower of cost or market, determined principally by the retail method". The reporting of merchandise inventory in the amount of $450,636,556 and the aforesaid statement was false and misleading in that, *inter alia,* it failed to report or reflect, among other things, the fact that (i) the calculation of inventory did not conform to standard auditing procedures (ii) that inventory had been marked up without being reflected on the store's books, thus making the cost figure higher than the true cost of the item, (iii) that the calculation of inventory was obtained by netting mark-ups and markdown figures, instead of following the retail inventory method, as represented; (iv) that the cost of inventory was inflated because of the practice of over-billing and over-pricing the merchandise, (v) that the stores were not closed when inventory was taken, (vi) that a substantial portion of the inventory was overaged and damaged and (vii) that by reason of the foregoing, the amount of merchandise inventory was grossly overstated.

(C) In Grant's 1974 Annual Report, issued in or about April, 1975, the following is stated:

(1) "a more satisfactory balance between everyday staple line of merchandise over big-ticket items has been developed." This statement was false and misleading, in that (i) it had no foundation in fact and it failed to report or reflect the fact, among other things, that (ii) the big-ticket items such as appliances and among other furniture, were so unprofitable that the entire line would have to be eliminated and written off and (iii) that Grant's buying organization was still buying and stocking big-ticket items in quantities that could not be supported by the existing credit policy.

(2) "The company is confident that the programs which it has implemented are correcting

allegations in light of Rule 9(b), F.R.Civ.P., that I now turn. These amended allegations sufficiently identify the figures and statements claimed to be false, as well as the financial statements certified by Ernst & Ernst in which that information appeared. However, the mere designation of this information, the glaring omission of which was highlighted in my previous opinion, does not in and of itself satisfy the strictures of Rule 9(b). The complaint must particularize not only the errors or omissions made by the accounting firm but also the manner in which the firm acted improperly. *Gross v. Diversified Mortgage Investors, et al.,* 431 F.Supp. 1080, 1087 (S.D.N.Y. 1977). Moreover, since the amended allegations, like those originally pleaded, are rooted in "information and belief," it is incumbent upon plaintiffs to have laid a sufficient factual foundation for their assertion.[2] *Segal v. Gordon,* 467 F.2d at 608.

its problems and that its recovery will be achieved." This statement was false and misleading in that (i) it had no foundation in fact and (ii) it concealed the fact that for the third quarter of the 1975 fiscal year, Grant would have a multi-million dollar loss and would be operating with a negative net worth.

(3) "While management anticipates a loss for both the first and second quarters of 1975, it believes that operations will become profitable in the second half of this fiscal year." This statement was false and misleading in that (i) it had no foundation in fact and (ii) it concealed the fact that for the third quarter of the 1975 fiscal year, Grant would have a multi-million dollar loss and would be operating with a negative net worth.

(D) In the consolidated financial statements of Grant contained in the 1974 Annual Report and certified by defendant Ernst & Ernst, net consumer accounts receivables, carried as assets of Grant, were reported to be in the amount of $399,968,000. The reporting of net customer accounts receivables in the amount of $399,968,000 was false and misleading in that it failed to reflect or report, among other things, that (i) Grant had been engaged in procedures whereby it consolidated delinquent accounts and made them current, refinanced delinquent accounts which should have been written off in order to make them current, and took previously written-off accounts to make them current by payment of a certain amount, (ii) Grant continued to engage in, for part of fiscal 1974, the practice of writing off delinquent accounts after nine months, (iii) a substantial portion of Grant's customers accounts receivables were risky, speculative, and essentially worthless, (iv) that in fiscal 1975, a substantial portion of Grant's accounts receivables amounting to many millions of dollars would have to be written off, (v) that the provision for doubtful accounts was grossly inadequate and (vi) by reason of the foregoing, the amount of net customer accounts receivables was grossly overstated.

(E) In the aforementioned consolidated financial statements, merchandise inventory, carried as an asset of Grant, was reported to be in the amount of $407,357,000. The notes to financial statements relating to inventory stated: "Merchandise inventories in stores are stated at the lower of cost or market, determined by the retail method." The reporting of merchandise inventories in the amount of $407,357,000 and the aforementioned statement was false and misleading for the reasons set forth in paragraph 34(B) above.

38. During the class period in question, Ernst & Ernst was the Certified Public Accountant for Grant. Ernst & Ernst certified the consolidated financial statements of the company during the period and stated that its examination of the consolidated financial statements were made in accordance with generally accepted auditing standards and that it was its opinion that the consolidated financial statements fairly represented the consolidated financial statements of Grant and the consolidated results of its operations. At the time they examined and certified the aforementioned consolidated financial statements, Ernst & Ernst, knew, recklessly disregarded the fact, or should have known from its audit of Grant's operations, of the facts set forth in paragraphs 31, 33 and 34 above and that the aforementioned consolidated financial statements did not fairly present the true state of Grant's operations or financial condition and were materially false and misleading for the reasons stated hereinabove.

39. Defendant Ernst & Ernst knew, at the time they examined and/or certified the aforesaid consolidated financial statements that the consolidated financial statements certified by said defendant would influence the market price of the securities of Grant and that prospective purchasers of securities of Grant would rely on said financial statements and upon the integrity of the market in deciding whether to acquire an interest in Grant.

2. Plaintiffs have included the following allegation in the second amended complaint:

47. The basis of plaintiffs' information and belief as to the facts alleged herein is sworn testimony given by various defendants and others in an investigation into wrongdoing at Grant commenced by Grant's Trustee in Bankruptcy, public statements of various defendants and public documents.

■ An examination of the amended allegations in light of the above requirements reveals insufficient particularization, despite the identification of the purported false figures and reports. Although plaintiffs have alleged the manner in which this information was false or misleading, they have omitted assertions crucial to the vitality of the claim against Ernst & Ernst. For example, plaintiffs complain the stated dollar amounts of net customer accounts receivable and of merchandise inventory, contained in the consolidated financial statements certified by Ernst & Ernst and included in Grant's 1973 and 1974 Annual Reports were "grossly overstated" for various asserted reasons. (¶ 34A, B, D, E).[3] Yet nowhere do the pleadings provide the approximate amount of the overstatement, notice of which defendant is entitled.[4] *Jacobson v. Peat, Marwick, Mitchell & Co., et al.,* (S.D.N.Y.1977); *Goldberg v. Shapiro,* [1974–75 Transfer Binder] C.C.H. Fed.Sec. L.Rep. ¶ 94,813 at 96,717 (S.D.N.Y.1974).

■■ More crucial, however, is the omission of allegations which would give rise to an inference of actionable wrongdoing by Ernst & Ernst. This defendant is charged with certifying financial statements at a time when it knew, recklessly disregarded, or should have known, by virtue of its audit of Grant's operations, that the amounts included for net customer accounts receivables and merchandise inventory figures were overstated. (¶ 38 incorporating ¶ 34 A, B, D, E).[5] Additionally, plaintiffs seek to hold Ernst & Ernst liable for the inclusion in Grant's 1974 Annual Report of certain purportedly false statements (¶ 38 incorporating ¶ 34C).[6] This latter claim, however, is devoid of any asserted linkage between Ernst & Ernst and the examination, preparation, certification, making or dissemination of these statements. Without some factual indication of the extent of the accountants' knowledge of these purportedly false statements or their participation in their dissemination, this portion of plaintiffs' claim must fail. *See Rich v. Touche Ross & Co.,* 68 F.R.D. 243, 246–47 (S.D.N.Y. 1975).

Nor can an inference of fraud be drawn from Ernst & Ernst's certification of the allegedly overstated figures in the absence of some factual indication that Ernst & Ernst was remiss in conducting the audit or was otherwise possessed of information indicating the true financial picture at the time of the certification. *Jacobson v. Peat, Marwick, Mitchell & Co., supra; Rich v. Touche & Co., supra. Compare Kamens v. Horizon Corp.,* 432 F.Supp. 322 (S.D.N.Y. 1977); *Lewis v. Black,* [1976–77 Transfer Binder] C.C.H. Fed.Sec.L.Rep. ¶ 95,638 (E.D.N.Y.1976). The claims concerning the overstated net customer accounts receivable figures are devoid of any assertions of improper auditing or accounting treatment or of any support for the proposition that Ernst & Ernst was aware of the write-off policy on which the overstatements were based at the time of the certification. While plaintiffs have alleged, with respect to the merchandise inventory figures, that the overstatements resulted from, *inter alia,* "the fact that . . . the calculation of inventory did not conform to standard auditing procedures[,]" this assertion is meaningless without some particularization of the manner in which the calculation

This allegation clearly lacks the factual specification required; and although generally the requisite foundation need not be separately alleged but may be gleaned from the complaint as a whole. *Hubshman v. Alexander Grant & Co., et al.,* [1976–77 Transfer Binder] Fed.Sec. L.Rep. (C.C.H.) ¶ 95,923 (S.D.N.Y.1977), an examination of the pleadings in issue reveals an insufficiently alleged factual basis for the belief as to Ernst & Ernst's wrongful conduct.

3.  *See* note 1 *supra.*

4.  Although plaintiffs have alleged that the net customer accounts receivable figure for fiscal 1973 failed to account for a change in write-off policy which deferred the write-off of $6.2 million of delinquent accounts receivable, plaintiffs' additional assertions detailing the manner in which the 1973 figure was false renders unclear whether the overstated amount is claimed to equal or exceed $6.2 million (¶ 34 A(i)–(vii).)

5.  *See* note 1 *supra.*

6.  *Id.*

84

did not so conform, what procedures Ernst & Ernst was under a duty to perform, and how non-performance rendered the certifications false. *Jacobson v. Peat, Marwick, Mitchell & Co., et al.,* at 523. This allegation is not saved by plaintiffs' assertions of mark-ups not reflected on the store's books and of calculating inventory by netting mark-ups and mark-downs rather than the "retail inventory method, as represented." (¶ 34B(ii), (iii), D).[7] The former assertion fails to reflect Ernst & Ernst's knowledge or use of or participation in this practice, and the latter fails to imply wrongdoing in light of plaintiffs' allegation that the merchandise inventory figures were represented to have been determined "at the lower of cost or market, determined principally by the retail method." Indeed, it is difficult, if not impossible, to discern the meaning of this claim.

■ Plaintiffs argue that allegations of factual support for the accountants' knowledge at the time of the certification are unnecessary. While plaintiffs are correct in contending that the state of mind with which the accountants acted can be generally averred under Rule 9(b), *Heit v. Amrep Corp., et al.,* [1975–76 Transfer Binder] C.C.H. Fed.Sec.L.Rep. ¶ 95,406 at 99,076 (S.D.N.Y.1975); *Oleck v. Fisher* [1975–76 Transfer Binder] C.C.H. Fed.Sec.L.Rep. ¶ 95,322 at 98,672 (S.D.N.Y.1975), simply coupling conclusory allegations of wrongful intent with neutral assertions of false information does not effectively substitute for the particularization of the circumstances constituting the accountants' fraud as required by that rule. *Jacobson v. Peat, Marwick, Mitchell & Co., et al., supra; Schmeidler v. Lazard Frere & Co., Inc., et al.,* 74 Civ. 2206 (CBM) (S.D.N.Y. January 5, 1977).

Accordingly, defendant Ernst & Ernst's motion to dismiss the second amended complaint as to them for failure to allege fraud with particularity is granted.

IT IS SO ORDERED.