Michael F. ARMSTRONG et al., Plaintiffs,

v.

Clovis McALPIN et al., Defendants.

No. 76 Civ. 4155 (HFW).

United States District Court, S. D. New York.

Dec. 5, 1978.

Gordon Hurwitz Butowsky Baker Weitzen & Shalov, New York City, for plaintiffs.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants HS Equities, Inc. by Edward C. McLean, Jr., Edwin D. Scott, Lisa A. Kennedy, New York City, of counsel.

Irving Rader, New York City, for defendant EHG Enterprises, Inc., Ariel E. Gutierrez and Enrique H. Gutierrez.

Leboeuf, Lamb, Leiby & MacRae, New York City, for defendant Bradford Trust Co. by Christopher C. Herman, New York City, of counsel.

Lunney & Crocco, New York City, for Clovis McAlpin and Capital Growth Real Estate Fund, Inc. by J. Robert Lunney, Michael J. McAllister, James J. DeLuca, New York City, of counsel.

MEMORANDUM DECISION

WERKER, District Judge.

Defendants Clovis McAlpin, Capital Growth Real Estate Fund, Inc., HS Equities, Inc., Bradford Trust Co., EHG Enterprises, Inc., Ariel E. Gutierrez and Enrique H. Gutierrez move to disqualify counsel for the Receiver, the law firm of Gordon Hurwitz Butowsky Baker Weitzen & Shalov (the "Gordon firm") in this securities fraud

derivative suit.[1] The basis of the motion is that a partner in the firm, Theodore Altman, participated in and supervised the Securities and Exchange Commission ("SEC") investigation of Capital Growth Fund ("Growth Fund") and related entities while employed as Assistant Director of the Division of Enforcement of the SEC. The SEC investigation led to an enforcement proceeding and ultimately to the instant action.

## FACTS

Theodore Altman was employed by the SEC from approximately October of 1967 to October of 1975, when he joined the Gordon firm. During the three years preceding his departure from the SEC Altman, as Assistant Director of the Division of Enforcement, played a supervisory role in various investigations. One of those investigations, *In the Matter of Clovis W. McAlpin, Capital Growth Fund, Capital Growth Company, S. A., New Providence Securities Ltd. and New Providence Securities Ltd., S. A.* (SEC File No. NY–5035) involved certain defendants in the present action. Altman's participation therein commenced in late 1973 and continued through 1974. The culmination of the SEC investigation was the issuance by Judge Stewart of an injunction against the commission of securities law violations by Growth Fund and others in *SEC v. Capital Growth Company, S. A. (Costa Rica),* 74 Civ. 3779 (CES). According to Altman, while he was employed at the SEC staff attorneys reported to him on the progress of the Growth Fund investigation and litigation, and he in turn rendered advice and directions. He signed documents and correspondence addressed to defendant Clovis McAlpin but alleges he was not involved in the matter on a day-to-day basis.

On September 24, 1974 Judge Stewart, pursuant to the SEC's request, appointed a Receiver, Michael Armstrong, in the *Capital Growth Company* action. In March of 1976 Altman was informed by another member of the Gordon firm that the Receiver had asked that firm to act as litigation counsel in the Growth Fund matter, and to commence litigation here and abroad on behalf of the Receiver to recover assets of Growth Fund and related entities. Both the Gordon firm and the Receiver were aware of Altman's involvement in the Growth Fund matter while he was employed at the SEC. They concluded that although Altman himself was disqualified by virtue of his former SEC involvement, the Gordon firm was not disqualified provided that Altman was isolated from the case pursuant to the standards in Formal Opinion 342 of the American Bar Association (Nov. 24, 1975)[2] and Opinion No. 889 of the Association of the Bar of the City of New York (Nov. 19, 1976).[3] Therefore on or about April 30, 1976 the Receiver formally applied to Judge Stewart to retain the Gordon firm as litigation counsel. The application disclosed Altman's own disqualification and revealed that two other partners, David M. Butowsky and Franklin B. Velie, would conduct litigation but that Altman would not. The application was approved by the court.

Before instituting any Growth Fund litigation, Butowsky wrote to the SEC to obtain its comment or waiver of any possible conflict of interest problems on the Gordon firm's part. The agency replied through Marvin E. Jacob, Associate Regional Administrator of the New York Regional Office. Jacob stated that there appeared to be no adverse interests between litigation counsel and the Receiver on the one hand, and the SEC on the other, and no appearance of impropriety. He continued that if Altman were screened from participation in the Growth Fund matter, the SEC did not believe that the Gordon firm would be dis-

---

1. Despite the fact that this action is two years old, this is the first time that defendants have raised the issue of disqualification of plaintiff's counsel. Delay or laches will not, however, prevent disqualification in a proper case. *United States v. Standard Oil Co.*, 136 F.Supp. 345, 351 n.6 (S.D.N.Y.1955).

2. 62 ABA Journal 517 (1975).

3. 31 *The Record* 552 (1976).

qualified from acting as litigation counsel to the Receiver. The Gordon firm has outlined how Altman has been screened. Altman is excluded from participation in the action, has no access to relevant files and derives no remuneration from funds obtained by the firm from prosecuting this action. No one at the firm is permitted to discuss the matter in his presence or allow him to view any document related to this litigation, and Altman has not imparted any information concerning Growth Fund to the firm.

Defendants argue that Altman's knowledge of this matter must be imputed to all members of the firm and that any screening process is insufficient. ·Altman himself is concededly disqualified by Disciplinary Rule 9–101(B) of the American Bar Association Code of Professional Responsibility (the "Code").[4] That rule precludes private employment in any matter in which one has had substantial responsibility during prior public employment. Based upon this rule, it is defendants' position that disqualification of the entire firm is the only way to "avoid even the appearance of professional impropriety" mandated by Canon 9 of the Code. They further urge that this court be guided by case law containing language to the effect that what one partner cannot do, his firm cannot do. *E. g., Laskey Bros, Inc. v. Warner Bros. Pictures, Inc.*, 224 F.2d 824, 826 (2d Cir. 1955), *cert. denied*, 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956); *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976); *Handelman v. Weiss*, 368 F.Supp. 258, 264 (S.D.N.Y.1973); *see Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 229 n.10 (2d Cir. 1977).

## DISCUSSION

The issue of whether the disqualification of one partner must be imputed to his entire law firm has been considered in detail by both the American Bar Association (the "A.B.A.") and the Ethics Committee of the Association of the Bar of the City of New York (the "Association") in the above mentioned opinions. This consideration was apparently precipitated by the adoption of Disciplinary Rule 5–105(D) in 1974. That rule provides that "[i]f a lawyer is required to decline employment or to withdraw from employment under a disciplinary rule, no partner ·or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." D.R. 5–105(D) effectively automatically disqualified an entire law firm when one partner was disqualified, like Altman, under D.R. 9–101(B). The ABA noted in its Formal Opinion No. 342 that "[p]ast government employment creates an unusual situation in which an inflexible application of D.R. 5–105(D) would actually thwart the policy considerations underlying D.R. 9–101(B)." 62 *A.B.A. Journal* 517, 520 (1975). Therefore, the A.B.A. Committee continued, the application of D.R. 5–105(D) in a situation where the former government employee is disqualified through D.R. 9–101(B) should be analyzed in light of certain policy considerations such as the possibility of an unreasonable limitation on the recruitment of government attorneys, preservation of confidential information, the avoidance of an appearance of impropriety, and the discouraging of the handling of government matters in ways ·that may encourage subsequent private employment in those same particular matters. *Id.* The Committee concluded that the policies underlying D.R. 9–101(B) could be realized without a blanket disqualification rule by applying D.R. 5–105(D) to disqualify a firm where the disqualified individual has not been screened to the satisfaction of the agency concerned. The Committee thus took the position that, absent an appearance of significant impropriety, a government agency could waive D.R. 5–105(D) when satisfied that screening procedures effectively isolated the individual firm member who had previously dealt with the same matter.

---

**4.** In this circuit the Code of Professional Responsibility is regarded by federal and state courts as providing guidelines for professional conduct. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 n.2 (2d Cir. 1977).

The other opinion addressed to the instant issue is No. 889 of the Association, 31 *The Record* 552 (1976). There, the Association's Ethics Committee, like the A.B.A. Committee, rejected any absolute rule of disqualification of a firm due to an individual member's disqualification under D.R. 9–101(B). Instead, the Committee for the Association adopted the position that "where a lawyer who is himself disqualified under D.R. 9–101(B) can be effectively isolated from the handling of a matter by his partners and associates, and where this isolation is sufficient to avoid [an] appearance of impropriety, then the disqualification should not extend to the lawyer's partners and associates." 31 *The Record* at 566. The Committee recognized, however, that situations may arise where the firm must be disqualified due to inadequate screening of the individual attorney, *id.* at 568, or an appearance of impropriety that simply cannot be removed by any degree of screening when the disqualified attorney's relationship with the matter in government was extremely close and significant. *Id.* at 571.

In the instant case the SEC has voiced no objection to the Gordon firm's participation in this lawsuit. The court does not find this dispositive. The SEC is not a party to this action; additionally, it is not surprising that the SEC has no objection to the Gordon firm's representation of the Receiver since both the Receiver in this action and the SEC in the prior enforcement action appear to share the same interest—rectifying the alleged misappropriation of assets of the Capital Growth companies. Thus the SEC cannot waive for defendants their objections to the qualification of plaintiffs' counsel here. Despite this, after carefully reviewing the facts of this case, the screening procedures employed to isolate Altman, and the affidavits, memoranda, and exhibits submitted by the parties, the court is satisfied that there is no actual impropriety and no appearance of impropriety under all the circumstances. Accordingly, the Gordon firm need not be disqualified.

This case is dissimilar to *Handelman v. Weiss*, 368 F.Supp. 258 (S.D.N.Y.1973), relied upon by defendants. There the individual attorney, along with his firm, was actively prosecuting a securities fraud suit, the substance of which the individual had previously worked on as assistant to the trustee's attorney under the Securities Investors Protection Act of 1970. The court found from the documents before it that the attorney had formed a definite intent while working for the Securities Investor Protection Corporation to develop a subsequent suit against defendants. Thus the court viewed the attorney as being twice compensated for the same labors. 368 F.Supp. at 264 & n.11. Further, the court extended the individual's disqualification to the entire firm because there was "no reason to suppose that Salomon has not communicated his views of this case to his partners, and his knowledge must therefore be imputed to them." *Id.* In comparison, nothing before this court indicates that Altman, while employed by the SEC, formed an intent to prosecute a later action involving Growth Fund. Indeed, sworn affidavits reveal that he has never participated in any fashion whatever in the Gordon firm's representation of the Receiver, nor has he shared in the firm's income derived from prosecution of this action. And, unlike the *Handelman* case, Altman and his two partners Velie and Butowsky have attested under penalty of perjury that Altman has never discussed the action with other firm members. These statements are uncontradicted by defendants and provide a basis for *not* imputing Altman's knowledge to other members of the firm.

Other authorities cited by defendant are also factually inapposite. *Telos, Inc. v. Hawaiian Telephone Co.*, 397 F.Supp. 1314 (D.Hawaii 1975) involved a former government attorney who himself later actively participated in private litigation similar to a suit he had filed on behalf of the government. The same was true in *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir. 1974). *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976) involved a situation wherein the firm in which an attorney was a partner was suing a client of another firm where the same

attorney was also a partner. Similarly, *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977) involved an issue of conflicting representation. Plaintiff's counsel was disqualified since it was in a position to obtain confidential information from another law firm representing the defendant Arthur Andersen. And *Laskey Bros., Inc. v. Warner Bros. Pictures, Inc.*, 224 F.2d 824 (2d Cir. 1955) did not involve a former government employee but a two man law firm representing plaintiff where one partner had previously represented the defendants in similar litigation.

After duly considering the case law and A.B.A. and Association opinions outlined above, the court finds that the proper screening of Altman rather than disqualification of the Gordon firm is the solution to the present dispute. The Receiver's retention of the Gordon firm has resulted in no prejudice to defendants, who attempt to paint a picture of the SEC providing discovery documents to plaintiffs' firm while denying them to defendants. The facts, as opposed to defendants' speculation, show that the SEC provided the *Receiver* with the documents in question prior to his retention of the Gordon firm. Velie affid. at 4. Further, the Receiver is prepared to provide any and all of this information to defendants upon a discovery request. There is nothing unfair or prejudicial about this discovery arrangement, and the court declines to view it as providing a basis for an appearance of impropriety. Further, it should be noted that if indeed anyone has been prejudiced to date it is the Receiver rather than the defendants due to the latter's dilatoriness in moving to disqualify

counsel two years into this litigation. As Judge Gurfein observed in his concurring opinion in *J. P. Foley & Co. v. Vanderbilt*, 523 F.2d 1357 (2d Cir. 1975):

> "the attempt by an opposing party to disqualify the other side's lawyer must be viewed as a part of the tactics of an adversary proceeding. As such it demands judicial scrutiny to prevent literalism from possibly overcoming substantial justice to the parties."

*Id.* at 1360.

In conclusion, the court agrees with the view expressed in *Kesselhaut v. United States*, 555 F.2d 791 (Ct.Cl.1977) (per curiam) as to private retention of a firm in a matter wherein one member has had prior governmental experience:

> We share the view expressed in the above-mentioned Formal Opinion 342 that an inexorable disqualification of an entire firm for the disqualification of a single member or associate, is entirely too harsh and should be mitigated by appropriate screening such as we now have here, when truly unethical conduct has not taken place and the matter is merely one of the superficial appearance of evil, which knowledge of the facts will dissipate.

*Id.* at 793. In refusing to disqualify plaintiffs' firm the court emphasizes that it finds this holding appropriate under all the circumstances of this particular case but recognizes that different facts might well compel a contrary result.[5]

Defendants' motion is denied. All motions addressed to the second amended com-

---

5. In evaluating all the facts of the present situation the court has considered the most recent submission of Clovis McAlpin and Capital Growth Real Estate Fund, Inc. There defendants attempt to show that Mr. Altman, while in private practice, worked on a matter involving an "EHG transaction" as attorney for special counsel to International Controls Corporation in *International Controls Corp. v. Hogan & Hartson*, 77 Civ. 5764 (RJW). Since the words "EHG transaction" are also used in the sixth, seventh, and eighth causes of action in the complaint pleaded in the instant action, defend-

ants contend that Altman has not been totally screened from this suit at the Gordon firm. It suffices to note that an examination of the documents relating to the "EHG transaction" in *International Controls Corp. v. Hogan & Hartson* and a reading of the fraud causes of action concerning the "EHG transaction" in this suit reveal that the subject matter of each is distinct. Defendants' attempt to rebut Altman's affirmation that he has been fully screened from the prosecution of this action is therefore rejected.

plaint are ordered returnable on the thirtieth day from entry of this decision.[6]

SO ORDERED.

---

**6.** A determination on a disqualification motion is directly appealable within this circuit. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 496 F.2d 800 (2d Cir. 1974) (en banc); *Allegaert v. Perot*, 565 F.2d 246, 247 n.1 (2d Cir. 1977). Since an appeal from this decision will necessarily alter the briefing schedule for motions, defendants are directed to notify promptly this court and plaintiffs' counsel of intent, if any, to appeal to the Second Circuit.