**Noah A. TROYER and Clara Troyer, Plaintiffs,**

v.

**Joseph KARCAGI; Prescott, Ball & Turben; Edward D. Jones & Co.; and First Columbus Corporation, Defendants.**

No. 78 Civ. 1946 (RWS).

United States District Court, S. D. New York.

April 10, 1980.

1202

John C. Klotz, New York City, for plaintiffs.

Shea, Gould, Climenko & Casey, New York City, for defendant Edward D. Jones & Co.

Burns, Jackson, Miller, Summit & Jacoby, New York City, for defendants The First Columbus Corp. and Prescott, Ball & Turben.

Wofsey, Certilman, Haft & Lebow, New York City, for defendant Joseph Karcagi.

SWEET, District Judge.

Plaintiffs Noah A. Troyer and Clara A. Troyer (the "Troyers") have filed their second amended complaint in this securities fraud action against Joseph Karcagi, Edward D. Jones & Co. ("Jones"), and Prescott, Ball & Turben ("Prescott") under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). The suit against a fourth defendant, First Columbus Corporation ("First Columbus"), has been settled. The defendants have moved to dismiss certain counts of the second amended complaint under Rule 41(b), Fed.R.Civ.P., for failure to comply with this court's opinion of July 11, 1979 and orders of September 7, 1979 and November 13, 1979. Prescott has

moved under Rule 37 to impose sanctions on the Troyers for failure to provide discovery. Karcagi has moved to dismiss under Rules 12(b)(2) and 12(b)(3), Fed.R.Civ.P., alleging that venue is improperly placed in this district. Prescott has moved pursuant to 28 U.S.C. §§ 1404 and 1406 to transfer the action to the Northern District of Ohio. Jones and Karcagi join in this motion. The Rule 41(b) motion is granted in part and denied in part. The Rule 37 motion is denied. The motion to transfer under 28 U.S.C. §§ 1404 and 1406 is granted.

*Sufficiency of Second Amended Complaint*

The background of this action is set forth in an opinion of this court dated July 11, 1979. *See* D.C., 476 F.Supp. 1142. The original complaint was filed on April 28, 1978. In response to a motion to dismiss, plaintiffs served an amended complaint on September 6, 1978. In the July 11, 1979 opinion this court dismissed certain claims in the amended complaint, some with prejudice, others with leave to replead. On September 7, 1979, the Troyers moved for leave to serve a second amended complaint; the motion was granted upon condition that the causes contained therein be separately stated and numbered as to each defendant and that the basis of the alleged frauds be particularized as required by Rule 9(b), Fed.R. Civ.P. These conditions, including the requirement of compliance with Rule 9(b), were set forth in an order dated November 13, 1979. The Troyers then filed a second amended complaint, which differs from that authorized in September. Defendants claim that the second amended complaint is defective since it contains new causes of action not permitted by the September 7 motion to amend, and since its allegations do not comport with the conditions designated in the July 11 opinion and subsequent orders.

■ The defendants first contend that the reference in paragraphs 7 and 17 to a "plan or scheme" is an attempt to restate the conspiracy theory which is barred by the July 11 opinion. However, these paragraphs do not describe the alleged plan or scheme by Karcagi as a conspiracy; instead

the defendant brokers are charged as aiders and abettors of a scheme by Karcagi. *See ITT v. Cornfeld,* 619 F.2d 909 at 922 (2d Cir.1980). The validity of the aiding and abetting claim was expressly sanctioned by the July 11 opinion, *see* D.C., 476 F.Supp. at 1151–1152, and accordingly these paragraphs are not improper.

■ Defendants raise various objections to Count One, including the lumping together of allegations concerning all defendants, the failure of certain allegations to meet the particularity standards of Rule 9(b) as required by the November 13 order, and the attempt to restate claims which have previously been barred. Although the allegations in Count One are far from a paradigm of clarity, they adequately allege a cause of action against Karcagi for making a series of false representations to the Troyers in Millersburg, Ohio which induced them to open cash and margin accounts with First Columbus. These accounts have been held to be "securities" for purposes of Rule 10b–5. *See* D.C., 476 F.Supp. at 1147–1148. The claim that Karcagi made additional misrepresentations to induce the Troyers to continue depositing funds in these discretionary accounts and to move the accounts from First Columbus to Jones and later from Jones to Prescott is legally sufficient, as are the claims against Karcagi, Jones and Prescott for self-dealing. The first count also avers that Prescott and Jones are liable as "controlling persons" of Karcagi and for aiding and abetting Karcagi's violations of the securities laws; these allegations have previously been held to state valid causes of action. *See* D.C., 476 F.Supp. 1142.

■ However, certain averments in Count One must be stricken from the complaint, since they fail to comply with this court's directives. Paragraph 15, which alleges misrepresentations "of a continuing nature," fails to meet the specificity requirement of Rule 9(b). *See Denny v. Barber,* 576 F.2d 465, 469 (2d Cir. 1978). So much of paragraph 17(w) as alleges that the defendant brokers "realized other profits unknown to plaintiffs" is excessively vague

to provide fair notice of the alleged misconduct and is stricken. *See Morgan v. Prudential Group, Inc.,* 81 F.R.D. 418, 423 (S.D.N.Y.1978); *Todd v. Oppenheimer & Co.,* 78 F.R.D. 415, 419 (S.D.N.Y.1978). The averment in paragraph 21 that Karcagi, "on information and belief, realized secret profits on the trading of plaintiffs' accounts," is unsupported by any facts and therefore falls short of the requirements of Rule 9(b). *Weinberger v. Kendrick,* 451 F.Supp. 79, 84 (S.D.N.Y.1978).

Paragraph 17(v) is legally insufficient since it fails to allege that the claimed misstatements in May 1977 were in connection with the purchase or sale of a security. *See Troyer v. Karcagi,* D.C., 476 F.Supp. at 1148.

Defendants contend that paragraph 14, in which Karcagi's scienter is alleged "on information and belief," is insufficient under Rule 9(b). Rule 9(b) permits state of mind to be averred generally. This is not a case such as *Morgan v. Prudential Group, Inc., supra* at 423–24, or *Weinberger v. Kendrick, supra* at 84, in which the entire complaint is alleged on information and belief with no elaboration of the factual basis for the averments. The general allegation of scienter in this case is sufficient to satisfy the requirements of Rule 9(b). *See Armstrong v. McAlpin,* 461 F.Supp. 622 (S.D.N.Y.1978).

Count Two of the complaint, against First Columbus and Karcagi, reiterates no new basis for liability and is dismissed for failure to comply with the court's order of November 13, 1979.

Count Three alleges a cause of action against First Columbus, Jones and Karcagi under Rule 10b–5 for the "sale" of the cash and margin accounts by First Columbus in December 1973 to Jones for $19,-291.39. The Troyers claim that when Karcagi left the employ of First Columbus and became employed by Jones, he induced the Troyers to close their accounts with First Columbus and to open new accounts with Jones by omitting to make material statements necessary to clarify the nature of the

transaction. Jones allegedly paid First Columbus $19,291.36 in connection with the transfer of accounts and debited the Troyers' accounts for that amount, although the nature of these payments is not alleged. The Troyers seek to characterize this switch from First Columbus to Jones as the sale of securities, namely the cash and margin accounts initially issued by First Columbus; they describe First Columbus and Jones as the "issuer" and "underwriter," respectively, of these securities.

This claim has never been raised in any prior complaint. In addition to the fact that the court did not authorize presentation of this claim when the Troyers sought leave to amend in September 1979, this new count fails to state a cause of action under Rule 10b–5.

The defendants do not contest the claim that the Troyers closed their discretionary securities accounts at First Columbus in December 1973 and simultaneously opened new accounts at Jones. Moreover, as stated above, this court previously ruled that the cash and securities accounts opened by the Troyers at First Columbus, Jones and Prescott constituted "securities" for purposes of the Securities Act and the Exchange Act. 476 F.Supp. at 1147–1148. However, the description of First Columbus as the "issuer" of cash and security accounts which were then "underwritten" by Jones is simply incorrect. An underwriter purchases securities, either directly or indirectly, from an issuer and then facilitates the marketing of the securities to the public. *See SEC v. North American Research & Development Corp.,* 424 F.2d 63, 72 (2d Cir. 1970). To sustain their legal characterization of the facts in this case, the Troyers would be required to show that Jones served as an intermediary between First Columbus and the Troyers in the "distribution" of discretionary accounts.

There was no "sale" of the Troyers' discretionary accounts by First Columbus to Jones. *See* 15 U.S.C. § 78c(a)(14); *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979) (definition of sale requires "dis-

position" or contract to dispose of security). Rather, it would appear that First Columbus closed the Troyers' securities accounts and transferred the individual securities contained in the accounts to Jones. Jones did not become the owner of discretionary accounts issued by First Columbus, but instead opened its own new discretionary accounts for the Troyers. There is also no basis whatsoever for the claim that Jones "purchased" the securities contained in the accounts from First Columbus, since First Columbus was not the owner of these individual securities prior to transfer, and Jones did not become their owner after the transfer. This conclusion is not altered by the averment that commissions or fees were collected from the Troyers and paid to First Columbus in connection with the transfer of securities from the Troyers' accounts at First Columbus to their new accounts at Jones. Thus, Jones did not act as a middleman in a distribution of securities from First Columbus to the Troyers, but served as the issuer of new securities directly to the Troyers. *See Ingenito v. Bermec*, 441 F.Supp. 525 (S.D.N.Y.1977).

Although the Troyers did not seek leave to plead Count Three when making their motion to amend in September, the court would be inclined to permit the new cause of action to stand if it stated a valid claim. On the other hand, it would be futile to permit this amendment at this stage if the new claim would be subject to a motion to dismiss. *Grogg v. General Motors Corp.*, 72 F.R.D. 523, 527 (S.D.N.Y.1976). The Troyers' characterization of the undisputed facts underlying Count Three is legally untenable, and is inconsistent with the allegations of Count Five of the complaint. Since Count Three does not state a valid claim for relief, it is dismissed for failure to comply with the November 13 order.

Count Four utilizes the same legal theory proposed in Count Three, but applies the theory to the "transfer" of the Troyers' accounts from Jones to Prescott in January 1977. For the reasons set forth in discussing Count Three, this claim is also dismissed.

Counts Six, against Jones and Karcagi, and Seven, against Prescott and Karcagi, allege that the "maintenance" of margin accounts in connection with the purchase and sale of the securities contained in those margin accounts constitutes a violation of Rule 10b–5. In the July 11, 1979 opinion, this court held that the Troyers' claims were limited to purchases and sales of the discretionary accounts themselves and that they could not assert claims concerning the particular securities contained in the accounts. 476 F.Supp. at 1149. Further, the claims that misrepresentations leading to the mere retention of discretionary accounts violated Rule 10b–5 were held legally insufficient since they failed to satisfy the "in connection with" requirement of Rule 10b–5. *Id.* at 1148. Counts Six and Seven are restatements of these deficient theories and are dismissed with prejudice.

In Counts Eight, Nine and Ten, the Troyers allege pendant causes of action for common law fraud and conversion. The defendants have raised no specific objection to the insufficiency of the allegations in these counts, but contend only that the Troyers failed to include these counts at the time they sought leave to amend in September 1979. However, if the Troyers had moved under Rule 15(a) to amend their complaint to allege these state claims in November, leave would have been granted. Although plaintiffs have had many prior opportunities to assert these claims, there is no evidence that the delay is the result of bad faith or dilatory tactics. Defendants have not alleged that assertion of these claims will result in any prejudice to them. Furthermore, the factual basis for the fraud and conversion claims appears to be the same as that underlying the causes of action under the Securities Act and the Exchange Act, so that these claims will not require extensive new discovery. In view of the liberal policy toward amendment established by Rule 15(a), *see Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Holt v. Katy Industries, Inc.*, 71 F.R.D. 424, 426–427 (S.D.N.Y.1976), it would be inappropriate to dismiss these

claims without according plaintiffs an opportunity to litigate them on the merits.

*Failure to Answer Interrogatories*

■ Prescott has moved to dismiss under Rule 41(b) due to the Troyers' failure to make proper answers to interrogatories as ordered by this court. Prescott relies principally on the recent decision in *Cine Forty-Second St. Theatre v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979). In *Cine*, the Court of Appeals held that it was error for the district court not to invoke the preclusion sanctions of Rule 37, Fed.R. Civ.P., against a party which was grossly negligent in failing to meet discovery obligations.

Prescott served its first set of twenty interrogatories on July 26, 1979. When the Troyers neither objected nor responded in a timely manner, Prescott obtained an agreement by letter that the Troyers would file responses by October 5, 1979. The Troyers did not honor this obligation. Prescott then moved under Rule 37 to compel discovery. On October 29, 1979, this court granted this motion, and on November 13, 1979 ordered the Troyers to answer Prescott's interrogatories no later than November 15, 1979. The Troyers did file answers to this first set of interrogatories on November 15, 1979, and submitted a set of unaffirmed supplemental interrogatories on December 27, 1979. The supplemental answers provide substantially complete responses to Prescott's interrogatories.

In view of these circumstances, it cannot be denied that the Troyers have been dilatory and negligent in supplying late and incomplete answers. Yet, their conduct has not risen to the level of gross negligence or willfulness which would justify preclusion or dismissal. *See Cine Forty-Second St. Theatre v. Allied Artists Picture Corp.*, supra at 1066–1068. Accordingly, the motion to preclude is denied.

*Motions to Dismiss Due to Improper Venue or to Transfer*

Karcagi has moved to dismiss the action as to him since he claims that venue is not properly laid in this district. Each of the defendants has moved to transfer this case to the Northern District of Ohio under 28 U.S.C. §§ 1404(a) and 1406(a).

■ The motions for transfer under 28 U.S.C. §§ 1404(a) and 1406(a) take precedence over the motion by Karcagi to dismiss for lack of proper venue. Section 1406 permits the transfer of an action in the interests of justice even when the transferor court does not have personal jurisdiction over the defendants. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77 (2d Cir. 1978); *Outboard Marine Corp. v. Pezetel*, 461 F.Supp. 384, 393 (D.Del.1978). Therefore, even if personal service were not sufficient to confer: *in personam* jurisdiction over Karcagi in this district under the venue provisions of the Exchange Act and the Securities Act, this court has authority to transfer the action against Karcagi to a district where the action might have been brought. Under these circumstances, it would be inappropriate to consider the thorny question, apparently an issue of first impression, as to whether stock transactions on national stock exchanges in New York provide a sufficient basis for venue in this district when the transactions themselves are not alleged to form an essential part of a securities act violation.

Section 1404(a) of Title 28 provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought.

Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought.

In this case, it is unnecessary to elect between reliance upon section 1404(a) and section 1406(a), since taken together the statutes confer authority to transfer this suit whether or not venue is properly laid in this

district. *See Corke v. Sameiet M. S. Song of Norway, supra* at 80; *Volk Corp. v. Art-Pak Clip Art Service*, 432 F.Supp. 1179, 1181 (S.D.N.Y.1977). Moreover, the Troyers do not contest the fact that this suit "might have been brought" in the Northern District of Ohio. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Under either section, a transfer to the Northern District of Ohio is appropriate.

■ In ruling upon a motion to transfer, a court should consider a variety of factors including the convenience of the parties, the convenience of the material witnesses, the cost of obtaining the presence of witnesses, where the material events occurred, the relative accessibility of sources of proof, and the interests of justice in general. *See Helfant v. Louisiana & Southern Life Insurance Co.*, 82 F.R.D. 53, 57 (E.D.N.Y.1979); *SEC v. Page Airways, Inc.*, 464 F.Supp. 461, 463 (D.D.C.1978). The defendants have the burden of clearly demonstrating that a balance of these considerations tips in favor of transfer. *S–G Securities v. Fuqua Investment Co.*, 466 F.Supp. 1114, 1122–1123 (D.Mass.1978); *First National City Bank v. Nanz, Inc.*, 437 F.Supp. 184, 188 (S.D.N.Y. 1975).

■ All of the material events and circumstances underlying this action occurred in Ohio. The Troyers and Karcagi reside in that district. Prescott has its principal place of business there. Jones is also involved in this action only through activities which occurred in Ohio. All of the illegal representations, inducements, self-dealing, margin loans, and over-the-counter trades took place in Ohio. Although defendants have failed to designate the material witnesses whom they intend to call, see *Factors, Etc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), it is apparent that most of the individuals whose testimony will be pertinent to the issues in this case reside in Ohio. The designation by the Troyers of two witnesses who have offices in this district does not counterbalance this factor. *See SEC v. Page Airways, Inc., supra* at 464. In addition, the less congested calendar conditions in Ohio are a factor weighing in favor of transfer.

The Troyers contend that their choice of forum is entitled to considerable weight. However, it has been held that

> [w]here the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight.

*Goodman v. Schmalz*, 80 F.R.D. 296, 302 (E.D.N.Y.1978). *See also Kogok v. Fields*, 448 F.Supp. 197, 201 (E.D.Pa.1978). *Credit Alliance Corp. v. Nationwide Mutual Insurance Co.*, 433 F.Supp. 688 (S.D.N.Y.1977).

The Troyers claim that because of their Amish-Mennonite faith, they may be subject to social reprisals should it become known to fellow members of their sect that they are prosecuting this action in federal court. Although the court has taken this possibility into account as an "interest of justice," this factor is outweighed by the substantial reduction in the cost of litigation and the inconvenience to all other parties and witnesses which will result from a transfer to Ohio.

A final factor which tips the balance decidedly in favor of transfer is that the Troyers' new causes of action for fraud and conversion will apparently be governed by Ohio law. Resolution of the complex issues surrounding these claims is best reserved for courts familiar with Ohio substantive law. *See Goodman v. Schmalz, supra* at 302; *Vaughn v. American Basketball Association*, 419 F.Supp. 1274, 1278 (S.D.N.Y. 1977).

Taking into account all pertinent considerations, a transfer of this action to the Northern District of Ohio will promote the convenience of the parties and witnesses and the interests of justice.

The defendants shall submit an order on notice consistent with this opinion within ten days.

IT IS SO ORDERED.