**THE LIMITED, INC., Plaintiff,**

v.

**McCRORY CORPORATION, Rapid-American Corporation, Rapid-American Holding Corporation, Touche Ross & Co., DBG Financial Company, Meshulam Riklis, Harold S. Divine, Bernard J. Blaney, Stephen L. Pistner, Arthur E. Strickman, Arnold Broser and Steven J. Greene, Defendants.**

**No. 85 Civ. 7444 (RLC).**

United States District Court, S.D. New York.

Aug. 1, 1986.

Parker Chapin Flattau & Klimpl, New York City, for plaintiff; Alvin Stein, Mark Abramowitz, Stephen F. Harmon, Katherine C. Ash, of counsel.

Rubin Baum Levin Constant & Friedman, New York City, for defendants McCrory Corp., Rapid-American Corp., Rapid-American Holding Corp., Meshulam Riklis, Bernard J. Blaney and Stephen L. Pistner; Steven Marshall, of counsel.

Pollack & Kaminsky, New York City, for DBG Financial Co., Arnold Broser, Harold S. Divine, and Steven J. Greene.

Gelberg & Abrams, New York City, for defendant Arthur E. Strickman.

Gibson, Dunn & Crutcher, New York City, for defendant Touche Ross & Co.;

Walter L. Stratton, John T. Behrendt, Mitchell A. Karlan, Dvora Wolff Rabino, of counsel.

ROBERT L. CARTER, District Judge.

Plaintiff The Limited, Inc. ("The Limited"), a Delaware corporation which operates a national chain of retail stores selling women's apparel, brings this fraud action against three corporate defendants, McCrory Corporation ("McCrory"), Rapid-American Holding Corporation ("Holding"), Rapid-American Corporation ("Rapid-American"), (collectively the "Selling Group"), DBG Financial Company ("DBG"),[1] Touche Ross & Co. ("Touche"),[2] and seven present or former directors or officers of the Selling Group corporations (the "individual defendants").[3]

Plaintiff who purchased from the Selling Group all of the issued and outstanding stock of Lerner Stores Corporation ("Lerner"), a business which operates a national chain of approximately 800 retail stores selling women's and children's apparel, seeks damages for alleged violations by all defendants of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5; seeks damages from the individual defendants as controlling persons of Lerner, pursuant to § 20 of the Exchange Act, 15 U.S.C. § 78t(a); seeks damages against all defendants, except Touche, for violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961–68; seeks damages against all defendants, except Touche, under § 17 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(2); and seeks damages against all the defendants pursuant to § 352–c of the General Business Law of the State of New York.[4]

In essence, plaintiff charges that during the period that plaintiff was negotiating the purchase of Lerner stock, defendants made either misrepresentations or omissions which falsely inflated the value of Lerner's assets and net income.

Two motions are now before the court. The Selling Group and individual defendants[5] have filed a motion to dismiss the complaint pursuant to Rule 9(b), F.R.Civ.P., for failure to plead fraud with the requisite particularity, and Rule 12(b)(6), F.R.Civ.P., for failure to state a claim upon which relief can be granted. Defendant Touche, the accounting firm that audited the financial statements of Lerner for the year ended January 31, 1985, has separately moved to dismiss the complaint, pursuant to Rule 9(b), F.R.Civ.P. and 12(b)(6), F.R.Civ.P.

FACTS

In the fall of 1984, plaintiff entered into negotiations with three inter-related corporations, the Selling Group, to purchase all issued and outstanding Lerner stock. Comprising the Selling Group were McCro-

---

1. DBG Financial Company ("DBG") is a New York partnership consisting of various officers and directors of McCrory, Rapid-American and Holding.

2. Touche-Ross & Co. ("Touche") was the accounting firm that certified Lerner's financial statements for plaintiff.

3. (1) Meshulam Riklis (Chairman of the Board of Directors, Chief Executive Officer and President of Rapid-American; until February 1, 1985 was President of McCrory); (2) Harold S. Divine (Vice-Chairman of Board of Directors of Rapid-American, a Director and Executive Vice-President of McCrory, and a partner in DBG); (3) Bernard J. Blaney (Director, Vice-President and Treasurer of Rapid-American; Director and Vice-President of McCrory); (4) Stephen L. Pistner (a Director, Senior Vice-President of Rapid-

American; Chairman of Board of Directors and Chief Executive Officer of McCrory); (5) Arthur E. Strickman (a Director of McCrory; Chairman of Board of Directors, Chief Executive Officer and President of Lerner); (6) Arnold Broser (Vice-President of Holding; Trustee of McCrory Pension Plan; partner in DBG); and (7) Steven J. Greene (President and Chief Executive Officer of HRT Industries, Inc., a wholly owned subsidiary of McCrory; partner in DBG).

4. Plaintiff has withdrawn the Fourth Count of its Complaint requesting relief under § 15 of the Securities Act, 15 U.S.C. § 77o. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion To Dismiss at 47, n. 24).

5. Strickman joins in support of the motion to dismiss submitted by the Selling Group and individual defendants.

ry—a subsidiary of Rapid-American—which prior to April 2, 1985, owned all issued and outstanding capital stock of Lerner; Rapid-American, the principal shareholder of McCrory; and Holding, the sole stockholder of Rapid-American. (Complaint ¶ 5, ¶ 6, ¶ 7). According to plaintiff, the purchase price of Lerner stock would equal a certain sum of money in excess of the book value of the stock as determined by a certified year-end audit performed by defendant Touche, an accounting firm. On or about April 2, 1985, the Selling Group jointly sold all of the issued and outstanding stock of Lerner to plaintiff, pursuant to a memorandum of understanding and a stock purchase agreement. (Id. ¶ 19, ¶ 28).[6]

Plaintiff alleges that during the seven month negotiation period, the Selling Group corporations, acting through certain of their controlling officers and directors, entered into an agreement to defraud plaintiff. First, defendants are alleged to have caused Lerner to deviate from its usual markdown practices by limiting the amount of permanent markdowns at retail to a total of $80,000,000. Plaintiff contends that this $80,000,000 figure was "totally inadequate," (Complaint ¶ 25), as Lerner would have had to take significant additional markdowns in order to sell both its current and out of season inventory. This restriction on permanent markdowns is said to have distorted the true market value of Lerner's inventory, resulting in an inflated valuation of Lerner's assets and Lerner's net income on Lerner's financial statements for the year ended January 31, 1985. (Complaint ¶¶ 26–29).

Second, all defendants, except Touche, allegedly saddled Lerner with a multi-million twenty-year equipment lease. During negotiations for the sale of Lerner stock, these defendants failed to disclose to plaintiff that a two-year operating lease dated June 1, 1983 between DBG[7] and Lerner, for equipment which cost approximately $3,800,000 at a total rental of $2,880,000, was extended for an additional period of almost twenty years at a total additional rental of approximately $28,000,000. (Complaint ¶ 29). The financial statement of Lerner failed to reflect Lerner's liability for the purported lease extension, resulting in a materially false and overstated picture of Lerner's book value. (Complaint ¶ 30).

## DISCUSSION

On a motion to dismiss, the court must accept as true the factual allegations of the complaint. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam); *Joyce v. Joyce Beverages, Inc.*, 571 F.2d 703, 706 (2d Cir.), *cert. denied*, 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978). Accordingly, for the purpose of examining the instant motions to dismiss, the relevant facts outlined above are accepted as true.

Rule 9(b) requires that when a complaint alleges fraud, "the circumstances constituting fraud ... shall be stated with particularity." It is well settled that allegations of fraud under the federal securities laws and RICO are subject to this requirement. *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 19 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979); *Denny v. Barber*, 576 F.2d 465, 470 & n. 4 (2d Cir.1978); *Segal v. Gordon*, 467 F.2d 602, 606–08 (2d Cir.1972). The "circumstances" constituting fraud means "matters such as time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation." *Robertson v. National Basketball Ass'n*, 67 F.R.D. 691, 697 (S.D.N.Y.1975) (Carter, J.); *see also Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 522 (S.D.N.Y.1977) (Werker, J.).

---

**6.** The memorandum of understanding was executed on February 1, 1985, by defendant Divine on behalf of Rapid-American. The stock purchase agreement was executed by Blaney on behalf of McCrory and Rapid-American, and by Broser on behalf of Holding.

**7.** DBG is a partnership owned and controlled by three inside officers of several of the Selling Group corporations: Divine, Broser and Greene.

### A. The Section 10(b) and Rule 10b-5 Claims

Successful § 10(b)[8] and Rule 10b-5[9] actions require, *inter alia*, a showing that defendants had intended to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Defendants in the Selling Group and the individual defendants contend that the § 10(b) and Rule 10b-5 allegations in the complaint are based on information and belief insufficiently supported by particular facts. Rule 9(b) pleadings normally cannot be based solely upon "information and belief." *Segal v. Gordon, supra*, 467 F.2d at 608. Even when matters are peculiarly within the adverse parties' knowledge, a complaint based solely upon information and belief will survive a motion to dismiss under Rule 9(b) only if the pleading includes a statement of facts upon which the belief is founded. *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902 (S.D.N.Y.1983) (Carter, J.).

Contrary to defendants' suggestion, plaintiff's contention that the Selling Group "knew or should have known" the misleading nature of certain omitted facts does not, itself, violate the specificity requirements of Rule 9(b), *see Fox v. Prudent Resources Trust*, 382 F.Supp. 81, 95 (E.D. Pa.1974), *citing Dudley v. Southeastern Factor & Finance Corp.*, 446 F.2d 303, 308 n. 6 (5th Cir.1971), as the factual support for plaintiff's allegations is clear. Plaintiff maintains that during the seven month negotiation period when the Selling Group was actively negotiating plaintiff's purchase of all issued and outstanding Lerner stock, Lerner's equipment lease obligation was extended by approximately $28 million, and Lerner's permanent markdown was limited to $80 million. (Complaint ¶¶ 22, 24). Neither of these two facts was included in Lerner's financial statement for the year ended January 31, 1985. The complaint thus identifies both the document alleged to contain the securities fraud violations and the specific omissions that make such document false and misleading. *Gilman Bros., Inc. v. Peat, Marwick, Mitchell & Co.*, [1978] CCH Fed. Sec. L.Rep. ¶ 96,512 at 93,994 (S.D.N.Y.1978) (Weinfeld, J.); *Denny v. Barber*, 73 F.R.D. 6, 9 (S.D.N.Y.1977).

To the extent that defendants assert they have insufficient notice of the alleged wrongs, their motion to dismiss is rejected. The complaint adequately details the nature and essential factual elements of the alleged fraud so that it is possible for defendants to determine from plaintiff's allegations the general time, place, and contents of these alleged fraudulent omissions. Rule 9, F.R.Civ.P., when read in conjunction with Rule 8, F.R.Civ.P., requires no more detail of the fraud than has already been given. Further specifics as to the alleged fraudulent activities can be acquired through the discovery process.

---

**8.** Section 10(b), 15 U.S.C. Section 78j (1970), provides in pertinent part:

§ 78j. Manipulative and deceptive devices:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**9.** Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated pursuant to § 10(b), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

■ The complaint, however, still falls short of the required specificity. The pleading rules not only require notice of the activities complained of, but also, where multiple defendants are alleged to have participated in the fraud, reasonable notice of the part each defendant is to have played in the scheme.[10] *Securities & Exchange Commission v. Cable/Tel Corp.*, 90 F.R.D. 662, 664 (S.D.N.Y.1981) (Lasker, J.) (deficiences in alleging the culpability of each defendant "frustrate the purpose of Rule 9(b) to assure that a defendant receive fair notice of the plaintiff's claim against him so he can prepare an adequate defense"); *Felton v. Walston & Co.*, 508 F.2d 577, 581 (2d Cir.1974).

■ To satisfactorily allege as to each defendant the elements of § 10(b) and Rule 10b–5 liability, the complaint, at a minimum, must include the following: (1) the nature of each individual defendant's participation in the fraud, including the facts constituting scienter and an explanation of the defendant's duty toward the plaintiff; (2) whether the defendant is being sued as a primary defendant or as an aider and abettor;[11] and (3) as to allegations on information and belief, a statement of the source of the information and the reasons upon which the belief is founded.[12] *Goldberg v. Meridor*, 81 F.R.D. 105, 111 (S.D.N.Y.1979) (Lasker, J.).

■ The complaint fails to provide this notice as to any individual defendant. Rather, the complaint merely identifies each defendant individually (Complaint ¶¶ 5–17), and then reads:

18. Each defendant herein is sued individually and as a co-conspirator and aider and abetter. The liability of defendants arises from the fact that they have engaged in or gave substantial assistance to all or part of the unlawful acts, plans, schemes, transactions and artifices to defraud more particularly hereinafter alleged.

(Complaint ¶ 18).

Although the complaint identifies defendant Strickman, a director of both McCrory and Lerner, as the defendant who executed the twenty year extension of an equipment lease between Lerner and DBG, the complaint does not identify the role Strickman played, if any, in the stock purchase negotiation.

Nowhere in the complaint are any of the other individual defendants identified as having been direct participants in the negotiation of the Lerner stock transaction or as having had control over the day to day affairs of any corporate participant, including Lerner. For instance, the complaint alleges that "the merchandising managers and other merchandising personnel of Lerner were under instructions to limit the amount of permanent markdowns at retail to a total of $80,000,000," (Complaint ¶ 25), and that "pursuant to instructions of the defendants, the Lerner chain ceased taking permanent markdowns on inventory located in distribution centers even though the identical inventory located in the stores was permanently marked down." (Complaint ¶ 27). Defendants are entitled to know who among them issued such instruc-

---

10. Courts frequently have recognized that an important function of Rule 9(b) is to protect individuals and professionals such as accountants from baseless accusations of fraud, which have the damaging potential to injure personal and professional reputation. *E.g., Felton v. Walston and Co.*, 508 F.2d 577, 581 (2d Cir.1974); *Segal v. Gordon, supra,* 467 F.2d at 607; *Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 245 (S.D.N.Y. 1975) (Brieant, J.). This court has repeatedly held that the wholesale naming of directors and officers of corporations without any indication of the role of the individual defendants in the preparation or dissemination of reports or financial statements does not satisfy the requirements of Rule 9, F.R.Civ.P. *Ross v. A.H. Robins Co., Inc.,* [1978] CCH Fed. Sec. L. Rep. ¶ 96,388 at 93,354 (S.D.N.Y.1978) (Pierce, J.); *see Goldberg v. Meridor,* 81 F.R.D. 105, 110–11 (S.D.N.Y.1979) (Lasker, J.).

11. As to aiders and abettors, plaintiff must allege the following three elements of liability: (1) existence of a primary fraud; (2) knowledge by the aider and abettor of that fraud; and (3) substantial assistance of the fraud. *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47–48 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

12. *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

tions, and to whom those instructions were imparted.

Plaintiff's memorandum of law attempts to rewrite the complaint with the required specificity by stating that "the manner in which [Lerner's inventory markdown policies] was carried out and its effect on the valuation of Lerner's assets, are alleged in the complaint," (Plaintiff's Memorandum of Law at 10), and that "[Defendant Greene] occupied a position of significant influence in the Riklis [Selling Group] empire and could exercise influence and control over those who made decisions for the defendant corporations and for Lerner." (Id. at 47). Yet, no specific defendants are identified in the complaint as responsible for the inventory markdown policy and there are no allegations in the complaint suggesting "influence" or "control" on the part of Greene. It is plaintiff's memorandum of law, not the complaint, which attempts to depict a chain of command among the various inter-related corporate defendants and their officers and directors. (Id. at 9) ("DBG [ ] was the other party to this so-called extension and Messrs. Divine, Greene, and Boser, all named as defendants herein, are DBG's general partners.").

The complaint—in clumping together the corporate and individual defendants—implies that each defendant is responsible for the acts of other defendants, or for the acts of Lerner corporation. Yet, the allegedly fraudulent financial statement is that of Lerner, not that of any of the corporate defendants. The allegedly false representations contained in the financial statement were made by Lerner's management and not by any of the moving defendants, with the possible exception of Strickman. Basic principles of corporate law presume that absent a rather egregious disregard of corporate formalities, one corporate entity or

an individual with a substantial interest in the corporation is not automatically or readily responsible for the acts of another entity. *New York State Teamsters Conference Pension and Retirement Fund v. Hoh*, 554 F.Supp. 519, 525 (N.D.N.Y.1982) ("absent fraud or bad faith, a corporation will not be held liable for the acts of its wholly-owned subsidiaries or other affiliates"); *George A. Davis, Inc. v. Camp Trails Co.*, 447 F.Supp. 1304, 1307-08 (E.D. Pa.1978) (stockholder held not liable on contracts entered into by corporation, even where that stockholder was parent corporation and owned all outstanding shares in subsidiary that entered into the contract). Plaintiff has not alleged any facts which would "pierce the veil" of Lerner. It has not alleged that any corporate defendant in the Selling Group dominated or controlled Lerner and through this domination or control perpetrated a fraud, *United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO v. Great American Industries*, 479 F.Supp. 216, 242 (S.D.N.Y. 1979) (Duffy, J.); or that defendants' exertion of control over Lerner was the proximate cause of the injury complained of. *See, In re Ira Haupt & Co.*, 304 F.Supp. 917, 927 (S.D.N.Y.1969) (Motley, J.).

Comparable complaints, i.e. those in which allegations against multiple defendants have been grouped together under the rubric of a conspiracy have been considered and found wanting under Rule 9(b).[13] *Securities and Exchange Commission v. Cable/Tel Corp., supra,* 90 F.R.D. at 664; *Goldberg v. Meridor, supra,* 81 F.R.D. at 111; *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1278 (N.D.Ill.1976) ("[a]ll the representations are lumped together, seemingly in an effort to imply that each defendant is responsible for statements made by the others"). Plaintiff's § 10(b) and Rule 10b–5 charge against all defendants, except

---

**13.** Because the individual defendants here are officers and directors of the defendant corporations, and not the corporation whose financial statements contained material omissions, this situation differs from that in *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 911 (S.D. N.Y.1983) (Carter, J.). There, this court held that individual identifications were unnecessary to inform multiple defendants of what they had allegedly done wrong, where the misstatements or omissions at issue—contained in annual reports and financial statements—were presumed to entail the collective actions of the directors, officers and the accountant of the defendant corporation involved.

Touche, is dismissed for failure to allege fraud with the particularity required, and plaintiff is granted leave to replead this count.

The complaint is equally unclear as to what fraudulent acts or omissions the accounting firm Touche is claimed to have committed in violation of § 10(b) and Rule 10b–5. The only allegations relating specifically to Touche are that it approved certain of Lerner's financial statements with either "reckless disregard" of generally accepted auditing standards (Complaint ¶ 48) or out of negligence (Complaint ¶ 54). An inference of fraud does not arise from the mere fact that an auditor "certified" an inaccurate financial statement. *See Weinberger v. Kendrick*, 451 F.Supp. 79, 83 (S.D.N.Y.1978) (Duffy, J.). Touche, like the individual defendants, is left to guess which of the alleged illegal acts it is supposed to have committed. There is lacking the requisite factual specificity from which an inference of fraud on the part of Touche may be drawn.

Although the complaint sufficiently identifies the transactions and figures claimed to have been omitted, as well as the financial statement certified by Touche, the mere designation of such information does not in and of itself satisfy the requirements of Rule 9(b), without allegations of the manner in which the accounting firm acted improperly. *Weinberger v. Kendrick, supra*, 451 F.Supp. at 81; *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977) (Gagliardi, J.).

Plaintiff alleges that "Touche did not take sufficient audit steps, under generally accepted auditing standards, to determine that additional markdowns were required to be taken during the fiscal year ended January 31, 1985," (Complaint ¶ 49), and that "Touche should have disclosed the purported extension of the lease between Lerner and DBG." (Complaint ¶ 50). These allegations are meaningless without some particularization of the manner in which the auditing calculation did not so conform to generally accepted standards, or averment that Touche knew of Lerner's deviation from its usual markdown practices, or averment that Touche was aware of the extension of the equipment lease between Lerner and DBG. *See Goldman v. Belden*, 98 F.R.D. 733, 738 (W.D.N.Y.1983) ("The complaint, in order to survive a motion to dismiss, must identify with particularity exactly what it is that defendants knew and failed to consider in making the allegedly misleading or inaccurate statements. That is the essence of fraud."). Without some factual indication of the extent of the accountant's knowledge of these purportedly false statements or omissions, this claim against Touche fails. *See Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 246–47 (S.D.N.Y.1975) (Brieant, J.).

Plaintiff concedes that it excluded Touche from the conspiracy claim against the other defendants because "nothing has come to plaintiff's attention to indicate that Touche [ ] agreed with any of the other defendants to enter into the fraudulent lease extension or to change Lerner's inventory pricing policies in contemplation of the sale." (Plaintiff's Memorandum of Law at ¶ 8). Plaintiff cannot now charge Touche with recklessness in failing to disclose the lease extension or the restricted inventory markdown policy unless it alleges facts from which it can be inferred that Touche knew of the existence of such transactions.

Although the state of mind with which accountants acted can be generally averred under Rule 9(b), *Weinberger v. Kendrick, supra*, 451 F.Supp. at 84, "simply coupling conclusory allegations of wrongful intent with neutral assertions of false information does not effectively substitute for the particularization of the circumstances constituting the accountants' fraud as required by that rule." *Id.* (citations omitted). Accordingly, Touche's motion to dismiss the securities fraud count of the complaint as to it for failure to allege fraud with particularity is granted.

### B. § 20 Claims Against Individual Defendants

Plaintiff alleges that all the individual defendants are liable under § 20 of the Exchange Act for any violations of the Act committed by Lerner and the corporate defendants composing the Selling Group. That section imposes liability upon "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter...." 15 U.S.C. § 78t(a).

■■■ Because this court has found that plaintiff's purported § 10(b) and Rule 10b–5 claims are not pled with sufficient particularity, plaintiff cannot state a claim against any of the defendants under § 20. *See Bosio v. Norbay Securities, Inc.*, 599 F.Supp. 1563, 1568 (E.D.N.Y.1985). If plaintiff files an amended complaint that alleges with particularity the specific fraud perpetrated by each defendant sued, plaintiff can at that time assert a § 20 claim.

### C. § 17 Claims Against all Defendants Except Touche

Plaintiff alleges violation of § 17 of the Securities Act, 15 U.S.C. § 77q, by all the defendants except Touche, in that they allegedly "(a) employed devices, schemes and artifices to defraud, (b) obtained money or property of plaintiff by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices and courses of business which operated as a fraud and deceit upon plaintiff." (Complaint ¶ 35). The pleading tracks the language of § 17(a)(1), (2), (3).

■■■ The elements of a claim under § 17 are akin to those of a claim under § 10(b).[14] *In re Haven Industries, Inc.*, 462 F.Supp. 172, 181 (S.D.N.Y.1978) (Gagliardi, J.). Because the complaint is insufficient to support the fraud claims under § 10(b) and Rule 10b–5 for failure to satisfy Rule 9(b), it is also insufficient to support the fraud allegations under § 17 of the 1933 Act. *Ackerman v. Clinical Data, Inc.* [Current Transfer Binder] CCH Fed. Sec. L. Rep. ¶ 92,207 at 91,572, n. 12 (S.D.N.Y.1985) (Haight, J.).[15] Plaintiff is given leave to replead its § 17 claim.

### D. The RICO Claims

Plaintiff alleges that all the defendants, except Touche, engaged in activities affecting interstate commerce and that their activities "constitute a pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c). (Complaint ¶¶ 58, 59, 60). That section and § 1964(c) of RICO create a civil cause of action where the plaintiff alleges: (1) conduct; (2) of an enterprise; (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). A pattern of racketering activity "requires at least two acts" of racketeering; racketeering itself is defined with reference to a list of enumerated offenses. 18 U.S.C. § 1961(5). *Sedima*, —— U.S. at —— n. 14, 105 S.Ct. at 3285 n. 14, citing S. Rep. No. 91–617 at 158 (1969) ("[t]he infiltration of legitimate business requires more than one 'racketeering activity' and the threat of continuing activity to be effective").

---

**14.** The § 17(a) cause of action differs only in that it prohibits fraudulent conduct in the *offer* or *sale* of any securities, whereas § 10(b) prohibits fraud "in connection with the *purchase* or *sale* of any security." (emphasis added). For the purposes of this discussion, this distinction is irrelevant.

**15.** The defendants also argue that no express cause of action is created by § 17, and no such action should be implied. Because the complaint's § 17 fraud allegations fail to satisfy Rule 9(b), there is no need at this juncture for this court to become embroiled in the current debate over whether the implication of a private right of action under § 17 is appropriate. *See Ackerman v. Clinical Data, Inc.*, [Current Transfer Binder] CCH Fed. Sec. L. Rep. ¶ 92,207 (S.D.N.Y.1985) (Haight, J.) (no private right of action under § 17); *but compare Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978), *cert. denied*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979) ("the language of § 17 is broad enough to imply a private right of action ...").

Plaintiff alleges as predicate acts violations of the federal securities laws and the mail and wire fraud statutes. (Complaint ¶ 58). Specifically, plaintiff charges defendants with using the mail and wires to transmit false financial statements regarding Lerner. Plaintiff's RICO count is deficient. It does not comply with Rule 9(b), F.R.Civ.P. The predicate acts of securities fraud set out in ¶¶ 55, 58 merely incorporate by reference the allegations of the securities fraud counts. In light of this court's finding above that the securities counts fail to comply with Rule 9(b) by not identifying the wrongful acts for which each defendant is culpable, these "security fraud" acts cannot form a predicate for the RICO count.

Plaintiff also has failed to adequately plead the predicate acts of mail and wire fraud. (Complaint ¶ 59). Although the complaint alleges that the mails and/or wires were employed to transmit false financial statements regarding Lerner, nowhere in the complaint does plaintiff allege which defendant employed the mails or wires, or when or in what manner these transmissions were made. For the same reasons that this court found the § 10(b) and Rule 10b–5 claims deficient, the court finds that plaintiff's RICO charge fails to satisfy Rule 9(b), and plaintiff is given leave to replead this count.[16]

E. *Plaintiff's State Law Claims Against All the Defendants*

Because the federal counts against all the defendants have been dismissed, with leave given to plaintiff to replead its fraud claims with the required particularity, plaintiff's state law claims—a negligence

claim against Touche and a claim against all defendants for relief under § 352–c of the New York General Business Law— must be dismissed as well for lack of pendant jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Federman v. Empire Fire & Marine Insurance Co.*, 597 F.2d 798, 809–10 (2d Cir. 1979).

For the reasons stated above, both motions to dismiss are granted, without prejudice to plaintiff's filing an amended complaint conforming with Rule 9(b) within thirty days of the filing of this opinion.[17]

IT IS SO ORDERED.

---

**16.** In light of the fact that plaintiff has not adequately alleged one predicate act, it is premature to address defendant's argument that plaintiff have not adequately alleged the required pattern of racketeering activity, necessary to sustain a RICO count. However, plaintiff in deciding whether to replead its RICO claim should note this court's recent opinion in *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 629 F.Supp. 860 (S.D.N.Y.1986) (Carter, J.), where this court dismissed a RICO claim against two defendants who were alleged to have participated solely in the malicious liquidation of plaintiff's margin account. Even though mul-

tiple sales of securities were involved, this court found that such sales represented a "single episode of fraud," and not a pattern of racketeering activity, since "regardless of the number of sales required to consummate [the liquidation] ... the liquidation of Modern Settings' account is just one episode." (Id. at 864).

**17.** Because the various counts in the complaint fail to satisfy Rule 9(b), there is no need to discuss defendants' arguments for dismissal under Rule 12(b)(6), F.R.Civ.P.