James K. LaROE, Jr. and LaRoe Construction Company, Inc., Plaintiffs,

v.

ELMS SECURITIES CORPORATION, Terence Herzog; Stanley Plesent, Jean Pierre Bouquet and William C. Samuels, as Executors of the Estate of Howard Samuels; Bruce Lipnick; Laurence Brown; and Merrill Lynch, Pierce, Fenner & Smith, Inc., Defendants.

No. 87 Civ. 1740 (SWK).

United States District Court, S.D. New York.

Oct. 7, 1988.

Biegel & Sandler, New York City by Lewis S. Sandler, Bruce Rose, for plaintiffs.

Scoppetta and Seiff, New York City by Walter A. Kretz, Jr., for defendants Elms Securities Corp. and Laurence Brown.

Burns, Kennedy, Schilling & O'Shea, New York City by Edmund J. Burns, for defendant Terence Herzog.

Squadron, Ellenoff, Plesent and Lehrer, New York City by Lawrence P. Eagel, Abigail Pessen, for defendants Stanley Plesent, Jean Pierre Bouquet and William C. Samuels, as Executors of the Estate of Howard Samuels.

Stiefel and Cohen, New York City by George Stiefel, Scott Klaiman, for defendant Bruce Lipnick.

Brown and Wood, New York City by A. Robert Pietrzak, Catherine A. Curran, for defendant Merrill Lynch, Pierce, Fenner & Smith, Inc.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs bring this securities fraud action pursuant to various federal and state laws: § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); the Racke-teer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.;* the Texas Deceptive Trade Practices Act, Tex.Bus. and Comm.Code §§ 17.41 *et seq.,* common law fraud, breach of contract, breach of fiduciary duty and negligence. The action, originally brought in the Northern District of Texas, was transferred to this district by order dated February 19, 1987.

Plaintiffs claim generally that the defendants—Elms Securities Corporation ("Elms Securities") and its individual officers—fraudulently induced them to invest, used the money for their own private purposes, and misrepresented the nature and financial condition of Elms Securities Corporation. Plaintiff seeks recovery from Merrill Lynch, Pierce, Fenner and Smith, Inc. ("Merrill Lynch") as an aider and abettor and on the Estate of Howard Samuels ("Samuels") as a control person as well as an aider and abettor. Presently before the Court are defendants' motions to dismiss the complaint pursuant to Fed.R.Civ.Pro. 9(b) and 12(b)(6); Merrill Lynch also moves to compel arbitration for any surviving claims. Elms Securities and its officers filed one set of papers, Samuels another and Merrill Lynch yet another. Plaintiff has responded and the defendants have filed reply papers.

## BACKGROUND

This discussion of the facts is based on plaintiffs' second amended complaint, and for the purposes of this motion the facts are assumed to be true as alleged. The cast of characters is as follows. Plaintiff James LaRoe ("LaRoe") is an individual residing in Texas and plaintiff LaRoe Construction Company, Inc. ("LaRoe Construction") is a Texas corporation. Defendant Elms Securities is a New York corporation which allegedly acted as a front for the individual defendants and which was a RICO enterprise as defined in 18 U.S.C. § 1961(4). Defendant Terence Herzog ("Herzog") served as Executive Vice President and as a director of Elms Capital Management ("Elms Capital"), a former defendant in this action, served in a similar

capacity for Elms Government Securities, Inc. ("Elms Government"), also a former defendant, and owns fifty percent of each of these entities. Defendant Laurence Brown ("Brown") serves as Senior Vice President and Chief Executive Officer of Elms Capital, and owns fifty percent of the stock of Elms Capital and Elms Government. Defendant Bruce Lipnick ("Lipnick") served as an officer and director of Elms Capital, and owns a number of shares of stock in both Elms Capital and Elms Government.[1] Plaintiff alleges that Herzog, Brown and Lipnick (also referred to as the "Elms principals") were controlling persons of each of the Elms entities.

The executors of the Samuels' estate are named in their official capacity only; Samuels is alleged to have been a director and Chairman of the Board of Directors of all the Elms entities from May, 1978 through July 1, 1982. Samuels was also allegedly a controlling person of the Elms entities. Finally, Merrill Lynch is a corporation which has been "associated" with the defendants and the enterprises. Though no longer defendants, Elms Capital and Elms Government are defined in the same fashion as Elms Securities, as a front for the individuals and as a RICO enterprise. Finally, each of the defendants, along with the two non-defendant Elms entities, allegedly formed a RICO enterprise that derived income from racketeering activity and through which defendants allegedly conducted a pattern of racketeering activity.

The drama began in August of 1980, at which time LaRoe met with Lipnick and Brown in New York to consider investment options. These two defendants made various representations to plaintiff which induced plaintiff ultimately to invest by wire transfer on August 20, 1980 $200,000 for the account of LaRoe construction; the money was sent to Merrill Lynch in Dallas, Texas. The funds were to be used by Elms Capital for investment purposes pursuant to a power of attorney executed on August 20, 1980. The alleged misrepresentations which induced this initial investment include: (a) Brown and Lipnick stating that Lipnick would invest the funds personally for the purpose of preserving the capital; (b) Brown and Lipnick representing that Samuels was a major figure at Elms; (c) literature from Elms and from Peat, Marwick, Mitchell and Co. describing Samuels history of public service; (d) Lipnick representing that he was one of the best investors of his kind in the world; (e) Lipnick promising that at no time would more than five percent of plaintiff's capital be at risk; (f) Lipnick assuring plaintiff that the investment would generate substantial and legal tax benefits; and (g) Lipnick contending that Elms was competently run by high quality people. Plaintiff contends he relied on these representations, would not have invested otherwise, and that Lipnick, Brown, Samuels and Herzog knew the statements were being made and were untrue. Based on the same or similar representations, plaintiff invested another $200,000 through Merrill Lynch on July 22, 1988 and a further $200,000 through Morgan Guaranty Trust Company. The total invested was thus $600,000.

Plaintiff claims that the Elms entities did not properly manage or invest the monies received from customers. Elms' bookkeeping was "virtually non-existent". The entities and the individual defendants converted the monies invested for their own personal use. Instead, of purchasing government securities for plaintiff's account as defendants had represented they would, defendants traded government securities on a 100% margin basis in large blocks and for the benefit of no particular customer. Complaint at ¶ 28. Defendants never informed plaintiffs that the money advanced to defendants was not invested in government securities. Complaint at ¶ 29. Defendants also misrepresented that the Elms entities were financially sound and well managed. Complaint at ¶ 30.

Brown travelled to Dallas, Texas between January and March of 1983, met with plaintiffs at the offices of Price, Waterhouse, and informed plaintiffs that Elms

---

**1.** It is unclear how Lipnick can own stock in either Elms Capital or Elms Government since Herzog and Brown can each own fifty percent of the stock of each.

held $390,000 for LaRoe Construction and approximately $110,000 for LaRoe personally. Complaint at ¶ 39. Brown explained that he would cover approximately $30,000 in costs which were charged against the LaRoe Construction account. He also promised that the corporate account value would be brought up to $520,000 before the end of the year if plaintiffs did not withdraw the money. *Id.* Plaintiffs allege on information and belief that at the time these representations were made, the Elms entities had no money to pay investors. *Id.* Although LaRoe demanded by phone the return of monies owed him, the Elms principals did not do so, but instead instructed Merrill Lynch to wire the $222,738.62 that remained in the account to Elms Government. Merrill Lynch transferred the money. None of this money was ever invested in securities, but was instead converted to the personal use of the Elms principals. *Id.* Ultimately, Elms Capital and Elms Government made a general assignment for the benefit of creditors in the Supreme Court of New York state, Westchester County, for the purpose of preventing LaRoe and others from recovering the monies invested with defendants. Complaint at ¶ 41.

Plaintiffs allege on information and belief that Merrill Lynch aided and abetted the Elms entities and their principals by acting as a conduit for the money from investors to Elms and by using its reputation to lend credibility to Elms' activities. Merrill Lynch "set up" the Elms office in New York to serve "as virtually a 'branch office' of Merrill Lynch." Complaint at ¶ 31. Merrill Lynch followed Brown's instruction to transfer the approximately $222,000 in the LaRoe account on April 22, 1983, even though Merrill Lynch knew that the transfer would cause plaintiffs to suffer losses. Complaint at ¶ 40. Merrill Lynch lent its services, including access to its computer data on Elms' customers, in order to receive fees, commissions and finders fees from Elms. Complaint at ¶¶ 31–2. Merrill Lynch used the "substantial short sales generated by Elms trading as credits" on which it loaned money and collected interest. The payments of the finders fees were made to the wives of Merrill Lynch employees. Complaint at ¶ 32. Merrill Lynch knew that Elms was defrauding its customers knowingly participated in the scheme in order to derive the income it received from its activities. Complaint at ¶ 31, 33. Plaintiff asserts that defendants' scheme to defraud could not have been accomplished without the assistance of Merrill Lynch. Complaint at ¶ 42.

Plaintiffs claim that Samuels aided and abetted the allegedly fraudulent scheme of the Elms' principals (a) by advancing unsecured interest-free loans to them with the understanding, alleged on information and belief, that the money need not be repaid, (b) by using credit card accounts for non-business purposes, and (c) by using limousines and other entertainment items for non-business purposes. These uses continued until the Elms entities collapsed financially. Samuels also allegedly aided and abetted the scheme by failing to warn LaRoe in connection with the transfer of money from Merrill Lynch to Elms Government. Complaint at ¶ 40.

## DISCUSSION

### Federal Securities Law Claim

Plaintiff claims in count 3 of the Complaint that defendants violated section 10(b) of the 1934 Securities Act by defrauding plaintiffs in connection with short and long trades of government securities and securities traded on the American and New York Stock Exchanges. Each of the defendants argue, though not always for the same reasons, that the complaint should be dismissed for failure to plead fraud with particularity and for failure to state a claim.

The Elms defendants (comprising Elms Securities and Brown) argue that the complaint does not state a claim because any fraud did not take place in connection with the sale or purchase of securities. They also attack the complaint as not pleading fraud with particularity by not specifying the separate role of each defendant, by making conclusory allegations, and by not adequately identifying the speaker in various allegations. Merrill Lynch argues that

the complaint does not state a claim because the misrepresentations concern only vague promises and general investment mismanagement, or in the alternative, mere failure of performance. Merrill Lynch also argues that plaintiffs have not plead fraud against it with particularity since none of the Merrill Lynch employees allegedly involved are identified and because the allegations, made on information and belief, do not state the factual basis for the claims. Samuels makes similar arguments, contending that the complaint does not allege fraud in connection with the sale or purchase of securities, alleges only mismanagement of funds, does not allege any misrepresentations made by him and does not adequately allege the "substantial assistance" element of an aiding and abetting claim. Samuels also asserts that the scienter required for a section 10(b) claim is not properly alleged for Rule 9(b) purposes.

■ In order to state a claim for a violation of section 10(b), plaintiff must allege (1) material misstatements or omissions, (2) indicating an intent to deceive or defraud (scienter), (3) in connection with the sale or purchase of any security, (4) upon which the plaintiff detrimentally relied. *See Feinman v. Schulman,* 677 F.Supp. 168, 170 (S.D.N.Y.1987) (citing *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir. 1986); *Jaksich v. Thomson McKinnon Securities,* 582 F.Supp. 485, 493 (S.D.N.Y. 1984)). A party must also allege that the defendant used instruments of interstate commerce or the national securities exchange to facilitate the fraud and that the fraud in fact caused the injuries. *First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427, 438 (S.D.N.Y.1986).

*The "In Connection With" Requirement*

Defendants argue that plaintiffs have not stated a cause of action for a section 10(b) violation since plaintiffs allege that the money they invested was not invested in government securities for plaintiffs' ben-

efit as intended, but instead was converted for defendants' personal uses. Plaintiffs retort that defendants induced them, by deceptive means, to invest monies with Elms to preserve the principals' capital and that the monies were used to collateralize margin trading accounts and were used to make long and short stock trades.

The Court agrees with defendants that the complaint may not satisfy the "in connection with" requirement. The Second Circuit has stated that the "in connection with" language "intended only that the device employed, whatever it might be, be of a sort that would cause reasonable investors to rely thereon, and in connection therewith, so relying, cause them to purchase or sell a corporation's securities." *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 860 (2d Cir.1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). Only those plaintiffs who have actually purchased or sold securities have standing to sue under section 10(b). *Baum v. Phillips Appel & Walden, Inc.,* 648 F.Supp. 1518, 1525 (S.D.N.Y.1986) (citing *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)). In the present case, plaintiffs appear to allege that they never purchased or sold any securities. The only securities purchases that allegedly took place were some unidentified purchases of government securities by defendants for their own account and some unidentified long and short sales of securities. The complaint does not state for whose account these latter securities transactions were effected. The Court does not decide whether plaintiff has satisfied the "in connection with" requirement, however, since plaintiff has failed to plead fraud with the requisite particularity.[2]

*Failure to Plead Fraud with Particularity*

■ If plaintiffs are attempting to allege that they actually purchased securities, through defendants, then the above discussion would obviously not apply. On the other hand, dismissal would be warranted

---

**2.** The Court believes that making such a decision at this time could only be advisory since

the complaint is unclear as to whether plaintiffs actually purchased or sold any securities.

694

pursuant to Rule 9(b). Rule 9(b) requires that

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The particularity requirement exists primarily to protect defendants from frivolous suits. Specifically, Rule 9(b) exists to give the defendant in a fraud action "fair notice of what the plaintiffs' claim is and the grounds upon which it rests." *Ross v. A.H. Robins*, 607 F.2d 545, 557 (2d Cir. 1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) (citations omitted). Allegations in a fraud complaint must specify the time, place, speaker, and the content of the alleged misrepresentations. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *see Howard v. Galesi*, [Current Developments] Fed.Sec.L.Rep. (CCH) ¶ 93,412 at 97, 141–42 (S.D.N.Y. October 5, 1987).

■ Plaintiffs have clearly not complied with the dictates of this Rule. First, the Court cannot discern whether plaintiffs allege that they actually purchased securities or not. Unidentified securities transactions, such as those alleged here, do not satisfy the particularity requirements. The transactions and the securities are not identified, it is unclear on whose account the trades were made, who made them, or when they were made. For this reason alone, the federal securities law count should be dismissed.

■ In addition, a number of the paragraphs describing the alleged fraud do not distinguish between defendants or do not identify when the various representations were made. *See* Complaint at ¶¶ 27–31, 38. In a case such as this one, with multiple defendants, Rule 9(b) requires that each defendant receive particularized notice of

his alleged participation in the alleged fraud. *DiVittorio, supra,* 822 F.2d at 1247; *Wolff Office Equipment v. Wang Laboratories,* No. 87 Civ. 1498 (SWK), slip op. (S.D.N.Y. November 18, 1987) [1987 WL 26844] (fraudulent acts must be connected to particular defendant); *The Limited, Inc. v. McCrory Corp.,* 645 F.Supp. 1038, 1043 (S.D.N.Y.1986); *SEC v. Cable/Tel Corp.,* 90 F.R.D. 662, 664 (S.D.N.Y.1981) (blanket reference to "defendants" insufficient).

■ Moreover, many of the allegations, particularly those concerned with Merrill Lynch, are made on information and belief. Since such allegations are viewed with disfavor in fraud complaints, a party pleading on information and belief must identify the factual basis for the belief. *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986); *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).[3] Plaintiffs have not done so here. For example, the complaint does not give the factual basis for believing that all the directors and officers of Merrill Lynch knew of the alleged fraudulent scheme, nor does the complaint identify the basis for alleging that the wives of Merrill Lynch employees received fees generated by the alleged scheme. The complaint also does not provide the factual basis for the alleged looting of Elms' assets by Samuels. Furthermore, plaintiffs do not identify the other allegedly disgruntled investors of the Elms entities, nor do they identify the nature of these other investors' involvement with the Elms entities. The allegation that the Elms principals "looted" the assets of the corporations would certainly upset other customers, but the Court cannot determine from the pleadings the relationship of these investors to the scheme alleged. It is apparent to the Court that the complaint does not adequately plead fraud with particularity.[4]

---

3. Allegations based upon "information and belief" will not meet the particularity requirements unless (1) the allegations are accompanied by a statement of the facts upon which the belief is founded, and (2) the matters alleged are

"peculiarly within the opposing party's knowledge." *Luce, supra,* 802 F.2d at 54 n. 1; *see also The Limited, supra,* 645 F.Supp. at 1042–43.

4. The Court's discussion of the allegations not plead with particularity is representative and

Thus, to the extent plaintiffs attempt to plead that they qualify as actual purchasers of securities, the complaint is inadequate for failure to plead fraud with particularity. Leave to replead is granted, even though plaintiffs have obviously made various amendments to the original complaint, since leave to replead is regularly granted, *see Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986), and since this dismissal is the first for failure to state a claim or plead fraud with particularity.

### The RICO Claim

Plaintiffs seek to recover under "civil RICO" provision 18 U.S.C. § 1964(c) and under RICO conspiracy provision 18 U.S.C. § 1962(d) on the basis of defendants' alleged violation of 18 U.S.C. § 1962(c), which makes it unlawful for any person to participate or conduct the affairs of an enterprise through a pattern of racketeering activity.[5] Defendants move to dismiss plaintiffs' RICO counts on the bases that plaintiffs have not sufficiently plead two predicate acts, that various defendant-persons are also named as an enterprise, and that the alleged RICO scheme did not have the requisite continuity.

### *Predicate Acts*

The statute defines a pattern of racketeering activity as two or more of the enumerated predicate acts occuring within ten years of each other. 18 U.S.C. § 1961(5). The question before the Court is whether plaintiffs have alleged two or more predicate acts. Since the federal securities law claim has been dismissed, it cannot be considered as a predicate act, though upon successful repleading it may be. The Court will thus consider whether the allegations of mail and wire fraud adequately allege two predicate acts.

Allegations of mail and wire fraud must satisfy the pleading requirements of Rule 9(b). *Rich–Taubman Associates v. Stamford Restaurant,* 587 F.Supp. 875, 878 (S.D.N.Y.1984). Allegations which simply track the statute are insufficient to form RICO predicate acts. *Cruse v. Equitable Securities of New York, Inc.,* 678 F.Supp. 1023, 1033 (S.D.N.Y.1987). Merely alluding to the use of the mails or wires is also insufficient, and the pleadings must explicitly set forth that information was in fact received through the mails or over the wires. *Id.* In order to state a claim for wire or mail fraud, plaintiffs must allege "(1) the existence of a scheme to defraud and (2) the use of the mails or interstate wires in furtherence of the fraudulent scheme." *In re Gas Reclamation, Inc. Securities Regulation,* 659 F.Supp. 493, 512 (S.D.N.Y.1987) (citation omitted).[6]

Plaintiffs allege in paragraph 36 that Lipnick's and Brown's representations induced LaRoe to transfer $200,000 by wire in August, 1980 in furtherance of the overall scheme to defraud plaintiffs of their money. This allegation satisfies the pleading requirement. *United States v. Sindona,* 636 F.2d 792, 802 (2d Cir.1980), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 ( ) (wire transfer of funds can form basis of wire fraud statute); *see also United States v. Pitt,* 717 F.2d 1334, 1340 (11th Cir.1983) (defendant need not have personally used interstate wires if use of interstate wires was clearly forseeable result of defendant's fraudulent conduct). On the other hand, the allegation in paragraph 40 that Elms[7] instructed Merrill Lynch to wire transfer funds held in plaintiffs' account to Elms Government in order to avoid returning the funds to plaintiffs is

---

not exhaustive. Upon any further pleadings in this action, plaintiffs must scrutinize the complaint so that it complies fully with the requirements of Rule 9(b) as interpreted in this Circuit.

**5.** Title 18 U.S.C. § 1962(c), states:
"It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..."

**6.** Since one of the elements of the mail and wire fraud statutes is a scheme to defraud, plaintiffs must allege the facts surrounding this scheme with particularity. As noted above, plaintiffs have not done so in a number of ways. Failure to do so may be reason enough to dismiss the mail and wire fraud claims.

**7.** The complaint does not state which Elms entity gave the instruction.

inadequate because it does not give a date for the transfer.

■ Similarly, plaintiffs' allegations in paragraph 37, concerning telephone conversations, are inadequate because they do not identify any particular telephone calls, any speakers, dates or times. *See The Limited, supra,* 645 F.Supp. at 1047; *Newman v. Rothschild,* 651 F.Supp. 160, 162 (S.D.N.Y.1986). Also missing is an allegation of what was said during these phone calls. The same is true for the allegations of wire fraud by telephone in paragraphs 38 and 40. *See id.* Thus, all but one allegation of wire fraud has been dismissed pursuant to Rule 9(b). Plaintiff has therefore not alleged at least two predicate acts. For these reasons, the RICO claim is dismissed, though with leave to replead.[8]

Since all the federal claims are dismissed, the Court dismisses the state claims for lack of federal jurisdiction. *See The Limited, supra,* 645 F.Supp. at 1047 (citations omitted). Plaintiffs may replead within thirty (30) days from the date of this order, consistent with this opinion.

### Conclusion

For the reasons stated above, the Court grants defendants' motions to dismiss the complaint pursuant to Rule 9(b). Leave to replead is granted, consistent with the Court's opinion, within thirty days from the date of this order.

SO ORDERED.

---

[8] The Court does not decide whether plaintiffs' RICO allegations satisfy the continuity requirements of the RICO statute as interpreted by this Circuit. In deciding whether to replead, the Court draws the plaintiffs' attention to *Richard-son Greenshields v. Lau,* 693 F.Supp. 1445 (S.D. N.Y.1988) and the cases cited therein as an example of the Court's most recent understanding of the tangled web of RICO decisions.